A91A0039. CARTER v. MAYOR &c. OF SAVANNAH.
(407 SE2d 421)

COOPER, Judge.

Appellant, Michael Steven Carter, sued Glenda Anderson ("Anderson") and the City of Savannah ("City") to recover for personal injuries he received in a motor vehicle collision at the intersection of 66th Street and Sutlive Street in Savannah, Georgia. In his complaint, appellant alleged theories of negligence and nuisance. He appeals the grant of summary judgment to the City of Savannah.

The collision occurred when appellant, riding his motorcycle in a westerly direction on 66th Street, struck an automobile driven by Anderson, which was travelling north across 66th Street on Sutlive Street. It is undisputed that at the time of the collision, the stop sign, which was usually located on the southeast corner of the intersection and which controlled traffic travelling north on Sutlive Street, was not in place. Appellant contends that the City failed to erect and maintain the stop sign in conformity with the established procedures promulgated by the City; that the City failed to replace the stop sign after having actual or imputed knowledge of its having been removed from its location; that the City's failure to properly erect and maintain the stop sign constituted negligence and the maintenance of a nuisance; and that the City's negligence and maintenance of a nuisance was the cause of appellant's injuries and damages. The trial

court in granting summary judgment to the City found that the City was entitled to judgment as a matter of law on both the negligence and nuisance claims.

1. In five enumerations of error appellant contends that the trial court erred in granting summary judgment to the City on his nuisance claim. "The law is clear in Georgia . . . that '[a] municipal corporation, like any other individual or private corporation, may be held liable for damages it causes to a third party from the operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or municipal function. . . .' " *City of Bowman v. Gunnells*, 243 Ga. 809, 810 (1) (256 SE2d 782) (1979). See also *Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419 (3g) (249 SE2d 224) (1978). "An action may be brought against a municipality for the creation or maintenance of a nuisance where the municipality is negligent in carrying out a lawful act which it was authorized to do. [Cit.]" *Town of Fort Oglethorpe v. Phillips*, 224 Ga. 834, 838 (165 SE2d 141) (1968). " 'Under some factual situations, it can be held as a matter of law that no nuisance exists; however, that question ordinarily is a question of fact for the jury.' [Cit.]" *Whiddon v. O'Neal*, 171 Ga. App. 636, 638 (320 SE2d 601) (1984). Therefore, we must determine whether the evidence in the present case was sufficient to raise a jury question as to whether the City could be held liable for the maintenance of a nuisance.

The following guidelines should be applied in determining whether a municipality may be held liable for the maintenance of a nuisance: "(1) The defect or degree of misfeasance must be to such a degree as would exceed the concept of mere negligence. (A single isolated act of negligence is not sufficient to show such a negligent trespass as would constitute a nuisance, [cit.].) (2) The act must be of some duration . . . and the maintenance of the act or defect must be continuous or regularly repetitious [cit.] [and] (3) Failure of the municipality to act within a reasonable time after knowledge of the defect or dangerous condition. [Cit.]" (Indention and punctuation omitted.) *City of Bowman v. Gunnells*, supra at 811.

Relying on *Shuman v. Mayor &c. of Savannah*, 180 Ga. App. 427 (349 SE2d 239) (1986), the City contends that its failure to replace the missing stop sign was a single isolated act of negligence which was neither repetitious nor of continuing duration. We disagree. In *Shuman*, the appellant was injured in a collision allegedly occurring because a motorist failed to observe a stop sign at an intersection that had been obscured by the branches of an overgrown tree. In a nuisance action brought by the plaintiff against the City, this court upheld the trial court's grant of summary judgment to the City because the evidence showed that prior to the plaintiff's accident, the municipality had not received any complaints about problems or accidents

due to the obscured stop sign. The court concluded that " '(t)o hold that defendant City should have known of the problem and corrected it, even without any record of complaints or accidents (attributed to the defect), is to impose a standard of ordinary care,' rather than the proper standard requiring a showing that the maintenance of the defect exceeded mere negligence." *Shuman,* supra at 428.

However, in the case sub judice, evidence was presented that the City had a recurring problem with vandals removing signs from the City streets and that this problem was especially acute in Savannah because the soil is so loose and sandy, thereby allowing signs to be easily uprooted. City officials testified that because of the loose soil composition, the City had established a general policy to pour concrete around the base of all the street signs to secure them into the ground, a policy which was apparently not followed as to the subject stop sign in spite of the City's prior knowledge that there had been problems in the past with vandals uprooting street signs at this particular intersection. The record indicates that approximately four months prior to appellant's collision, a stop sign at the intersection where the collision occurred had been replaced by City workers; that one month prior to appellant's collision, a street name sign that had been uprooted at the same intersection had been replaced without concrete; that an inspection of the subject stop sign after the accident revealed that it had never been concreted into the ground; and that the subject stop sign had been missing from the intersection for a period of at least one week prior to the accident. Thus, there was some evidence to support appellant's claim that the City had repeatedly failed to follow its own policies and procedures which had been promulgated to remedy the general problem that existed with street signs in the City and at this particular intersection.

We now consider whether there was evidence in the record sufficient to raise a material question of fact as to whether the City failed to act within a reasonable time after knowledge of the defect or dangerous condition. "If a municipality is to be held liable under a theory of maintaining a nuisance . . . [t]he municipality must either have knowledge 'or be chargeable with notice of the dangerous condition. . . .' [Cit.]" *Kicklighter v. Savannah Transit Auth.,* 167 Ga. App. 528, 531 (3) (307 SE2d 47) (1983). The City contends that since it did not receive actual notice that the stop sign had been removed, appellant's nuisance action must fail. Appellant argues, however, that actual notice is not necessary because the City should be chargeable with notice of the missing stop sign and the dangerous situation it created at this intersection. Specifically, appellant contends that the stop sign was missing for a sufficiently long enough period of time that notice may be imputed to the City.

Constructive notice of a defect may be shown by testimony as to

how long a defect existed prior to an accident. See *Crider v. City of Atlanta*, 184 Ga. App. 389 (1) (361 SE2d 520) (1987). "Notice may also be imputed to the city from the knowledge of its own agents or employees. [Cit.]" *Crider*, supra at 389. " 'The length of time . . . a defect must exist in order for an inference of notice to arise is ordinarily a question for the jury.' [Cit.]" *City of Atlanta v. Hightower*, 177 Ga. App. 140, 141 (338 SE2d 683) (1985). In the present case, an affidavit given by a witness revealed that the subject stop sign may have been missing for a period of at least one week prior to the date of the accident. The record further indicated that City employees were required to report missing and damaged street signs and other dangerous conditions that they saw within the City; that during the week prior to the accident, the street, which is located in a business district, was routinely patrolled by police officers; and that during the week preceding the accident, Sutlive Street was cleaned by a street sweeper employed by the City. Given the inherently dangerous situation presented by a missing stop sign at a heavily travelled intersection and the City's problem with uprooted street signs in general, we cannot say, as a matter of law, that one week was too short a period of time for the City to have learned about the missing stop sign and to have initiated action to remedy the dangerous situation.

" ' "On a motion for summary judgment the burden of establishing the non-existence of any genuine issue of fact is upon the moving party and all doubts are to be resolved against the movant. The movant has that burden even as to issues upon which the opposing party would have the trial burden, and the moving party's papers are carefully scrutinized, while the opposing party's papers, if any, are treated with considerable indulgence." [Cit.]' [Cit.] Since the City failed to conclusively refute appellant['s] allegation of a nuisance, the dangerous condition created by the City's failure to [properly erect, maintain and replace a stop sign], a material issue remains in these cases; therefore, the City's motion for summary judgment should have been denied. On summary judgment the court is concerned only with whether there is a genuine issue of fact for determination and not with the difficulty the [appellant] may have in proving [his case] at trial." *Whiddon*, supra at 639.

2. We also find that appellee's argument that there was no evidence that the absence of a stop sign at the intersection was the "cause in fact" of the accident is without merit. Appellant testified in his deposition that he believed that "it was evident that she [Anderson] didn't . . . see me, or she didn't slow down at all." He further states in response to a request to estimate the speed of Anderson's automobile, that he thought she was travelling "at least 25 [miles per hour]. . . ." Moreover, Anderson's testimony in her deposition was equivocal in regard to whether she stopped at the stop sign. Accord-

ingly, we hold that there were sufficient questions of fact for a jury to decide as to whether Anderson stopped at the intersection; whether Anderson would have stopped at the intersection if there had been a stop sign; and whether the absence of a stop sign at the intersection was the cause of appellant's injuries.

3. We, however, affirm the trial court's ruling that the City cannot be held liable for injuries resulting from the missing stop sign on a theory of mere negligent erection and maintenance of the sign. See *Cyr v. Mayor &c. of Savannah*, 188 Ga. App. 261 (372 SE2d 659) (1988).

*Judgment affirmed in part and reversed in part. Pope, J., concurs. Birdsong, P. J., concurs in judgment only.*

DECIDED JUNE 10, 1991 —
RECONSIDERATION DENIED JULY 2, 1991.

*Jones, Boykin & Associates, Noble L. Boykin, Jr., Charles W. Snyder*, for appellant.

*Oliver, Maner & Gray, Patrick T. O'Connor, Karsman, Brooks & Callaway, Edward M. Hughes, Wiseman, Blackburn & Futrell, James B. Blackburn*, for appellee.